# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR415-095 |
| | ) | |
| STACY PAUL WADDELL | ) | |

## ORDER

Stacy Paul Waddell has been indicted for wire and mail fraud, money laundering, and destroying counterfeit gold coins to prevent their use against him. Doc. 89. With trial in this case looming, the Court has been addressing a steady stream of his motions. *See* docs. 119, 121, 122, 123, 126 & 132. It reaches the last two (docs. 129 & 131) here.

## I. ADDITIONAL INTERNET ACCESS

Waddell moves the Court for additional internet access from the local (county) jail in which he is being detained pending trial. Doc. 129. His motion dials back to the October 22, 2015 evidentiary hearing on his suppression motion. There he waived representation by appointed counsel Robert P. Phillips, III, who'd been representing him since June 12, 2015. Waddell -- *during* the hearing -- chose to represent himself after disagreeing with Phillips' handling of the suppression motion. Doc.

124 at 126-147. At Waddell's request, the Court re-designated Phillips as stand-by counsel. *Id.* at 147 ("I will, however, leave, as you request, Mr. Phillips as standby counsel in this case."). Waddell has since been free to (and in fact has) used Phillips to assist him in preparing his defense. *See, e.g.,* doc. 137-1 at 3 (counsel telephonically appeared with him at a pretrial, dying-witness deposition).

On November 24, 2015, the Court granted Waddell ten additional hours a week of internet access, for a total of sixteen.[1] Doc. 108. That ruling, which went above and beyond what the law requires,[2] triggers an

---

[1]  The jail normally provides each inmate two hours of law library access but has been giving Waddell six. Doc. 135-1 at 2-3 ¶ 7. "With the assistance of staff members he has electronic access [to] the Westlaw library. In addition to legal research, the staff provides [him] with his electronic discovery material, which he may view on any of the computers not connected to the internet." *Id.* Defendant "is the only such prisoner permitted access to the internet – Chatham County currently has over 1,400 prisoners in its facility." *Id.* at 3 ¶ 8.

[2]  In fact, defendant is entitled to *no* internet access, as the government correctly points out, doc. 135 at 2-4. *See Smith v. Hutchins*, 426 F. App'x 785, 789 (11th Cir. 2011) ("[A] defendant who seeks to proceed *pro se* has no right to access a law library to aid him in his own defense at trial where he has already been provided the option of legal counsel.") (citing *Edwards v. United States*, 795 F.2d 958, 961 n. 1, 3 (11th Cir. 1986); *Rodriquez v. Chatman*, 2015 WL 4162980 at * 6 (M.D. Ga. Mar. 18, 2015) (same); *see also United States v. Cooper*, 375 F.3d 1041, 1052 (10th Cir. 2004) ("[W]hen a prisoner voluntarily, knowingly, and intelligently waives his right to counsel in a criminal proceeding, he is not entitled access to a law library or other legal materials."); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) ("[H]aving rejected the assistance of court-appointed counsel, Degrate had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial."); *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) ("The offer of court-appointed counsel to represent a defendant satisfie[s] the constitutional obligation of

extra expense to the local county jail.  Doc. 135-1 at 3 (It pays an employee $26.56 an hour to observe Waddell while he's on the internet); *see also id.* (the U.S. Marshal is already paying the county jail $70/day to house Waddell).

It is against that background that Waddell moves for more internet time:

> Considering that trial most likely will begin in January or February[, 2016] the defendant would only have 60-90 hours to prepare compared to the 1000's of hours and resources at the governments disposal.  Additional discovery is being provided in addition to the nearly 300 gigs of data and several 1000 documents already in need of review, not to mention legal research, trial prep, drafting of request to charge etc.

Doc. 129 at 2 ¶ 3.  But neither here nor in the rest of his motion does he specifically cite what "extra-internet-time" research he thinks he needs

---

a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments."); *United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) ("[T]here is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and access to legal materials.  There also is nothing constitutionally offensive about the limited access Robinson was provided once he made his election."); *United States v. Pina*, 844 F.2d 1, 5 n. 1 (1st Cir. 1988) ("When a defendant refuses assistance of appointed counsel, he has no right to unqualified access to a law library or the materials therein."); *United States ex rel. George v. Lane*, 718 F.2d 226, 233 (7th Cir. 1983) ("The petitioner's choice to proceed *pro se* was intelligently and voluntarily made with the knowledge that access to unlimited legal research facilities away from his place of detention would not be allowed due to his incarceration. . . . The trial court on numerous occasions properly offered the petitioner court-appointed counsel and . . . went so far as to designate 'stand-by' counsel to assist the petitioner with any questions or a full defense if he so desired.  This more than adequately fulfilled the guidelines set forth in [*Bounds v. Smith*, 430 U.S. 817 (1977)]."]).

to do. To try and convince this Court that such internet-access is vital, Waddell cites to two examples of *exculpatory* evidence he claims his limited "access" already reaped. Doc. 129 at 2 ¶ 2. But in fact "they are *inculpatory* emails between Waddell and one of the victims that corroborate the charged fraud." Doc. 135 at 4 (citing doc. 131-3, which are Waddell's emails to alleged victim Robert Folkenberg inducing him to send Waddell money in exchange for promises the alleged to be falsely made) (emphasis added)).

Again, Waddell gave up a host of benefits when he discharged the attorney that had been appointed for him at public expense. He must now live with that choice. His "additional internet access" motion therefore is **DENIED**. Doc. 129.

## II. "EMERGENCY" RE-DEPOSITION

Waddell also moves to re-depose Robert Folkenberg, a witness called by the prosecution to testify against him, whom the Government originally deposed on October 30, 2015. Doc. 131; *see* Fed. R. Crim P. 15. The Government says (and Waddell does not dispute) that Folkenberg is terminally ill and thus not likely to testify at the upcoming trial in this case. At the October 22, 2015 hearing, Waddell stated that he wanted to

waive his Rule 15(c)(1) right to attend the deposition in person and instead elected to do so by videoteleconference. The Court ensured that Waddell's waiver was knowing and voluntary. Doc. 124 at 183-94. To that end, it assured him that he was entitled to personally appear at the deposition at the Government's expense. *Id.* at 190; *see also* Rule 15(d) (attendance at government's expense). Nevertheless, Waddell chose to participate via video connection. Doc. 124 at 193. He then extensively questioned Folkenberg. Doc. 137-1 at 118-154, 155-176, 182-195.

In now seeking an "emergency" re-deposition, Waddell insists that the Court and Government assured him he would get to timely see, ahead of the deposition, the Government's deposition exhibits and the counterfeit gold coins he's alleged to have used in defrauding Folkenberg. In fact, he contends that he waived his attendance right:

> *on the conditions* [sic] that he be allowed to participate via video *and* that he be allowed to inspect any items to be used during the deposition. Defendant specifically requested to inspect the replica coins in the government's possession. After the court heard defendant's request the government agreed to allow defendant to inspect the [gold] coins [that are part of the Government's case against him].

Doc. 131 at 1 (emphasis added).

But that's simply not true. At the October 22, 2015 hearing, the Government *resisted* Waddell's personal attendance waiver. Doc. 124 at 185-86. The Court asked him if he understood the Government's resistance -- the Government had just expressly warned him that it would present to Folkenberg some "physical evidence that you will not have the ability to feel or touch. That will make it more difficult for you to conduct a cross-examination." Doc. 124 at 191. When the Court asked Waddell if he heard that explanation, *id.* at 191, he replied: "Yes, sir. Would it be possible for the government to show me the evidence while I'm here today that they're going to show [Folkenberg]?" *Id.* at 192. The Court responded that it doubted the evidence was then in the courtroom. Government counsel confirmed that and in fact reminded the Court about its chain-of-custody needs. *Id.* The Court then answered Waddell's question:

> THE COURT: Well, sure, if they'd brought all their evidence today, which is vast, they could pull it out of their [brief]case and show it to you. But they don't have that today.
>
> And the only option would be for the government to send some agent out there [to the jail] with that evidence to show it to you in advance of the deposition. But [the prosecutor's] carrying the evidence with him to Florida, *so it won't* be the day of the direct examination of that witness down in Florida. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: And even still, you wish to arrange a videoconference?

THE DEFENDANT: I think a videoconference would suffice, Your Honor.

THE COURT: All right. Well, we will go forward and accept your waiver.

Doc. 124 at 192-193 (emphasis added).[3] Thus, there was no such "condition."

Waddell next claims that at around 5:00 p.m. the night before the deposition, Phillips brought him a flash drive with additional discovery, including a transcript of a jail call between Waddell and Folkenberg. Yet, he was (due to jail law library access restrictions) unable to review this information until after the deposition. Doc. 131 at 1. Again, Waddell waived his right to complain -- *twice* -- at the hearing where he waived his deposition attendance rights, and also by discharging his attorney,

---

[3] Waddell's "gold coins" assertion is baseless. The Government had availed to Waddell the counterfeit gold coins for his (and his lawyer's) review and inspection months prior to the deposition, doc. 136-2, and yet neither pursued same. And after the October 22, 2015 hearing, the Government provided Waddell with photographs of the counterfeit gold coins well in advance of the deposition. *See* doc. 136-7. Waddell made other requests for discovery from the government during this same time frame, docs. 136-8 & 136-9, and even corresponded with the Government through Phillips about exhibits during the impending deposition -- after it had provided those photographs to him. *See* docs. 136-11, 136-12 & 136-13. Yet, he never asked to inspect the gold coins depicted in the photographs in any of those requests or emails.

who otherwise would have handled the deposition for him (the same "internet access" rationale applies here -- one who gives up the benefit of counsel, let alone personal-attendance rights at a Rule 15 deposition, must endure the accompanying limitations).

In any event, Waddell again complains too much -- because the Government has shown that it gave him more than Rule 15 demanded. In pertinent part Rule 15(e) provides:

> (e) **Manner of Taking**. Unless these rules or a court order provides otherwise, a deposition must be taken and filed in the same manner as a deposition in a civil action, except that:
>
> *　　*　　*　　*
>
> (2) The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial.
>
> (3) The government must provide to the defendant or the defendant's attorney, for use at the deposition, any *statement* of the deponent in the government's possession to which the defendant would be entitled at trial.

Rule 15(e). Hence, the Government's only trial deposition obligation was to provide Waddell with any Folkenberg *statements* -- something Waddell does not complain about here (even at that, the rule does not say *when* the statements must be provided).

The case law confirms the statements-only requirement. The court in *United States v. Cooper*, 947 F. Supp. 2d 108 (D.D.C. 2013) rejected a defendant's argument that he could not meaningfully participate in pretrial depositions until all discovery had first been completed; "there is no sound reason for requiring pre-deposition disclosure of statements of witnesses other than the Rule 15 deponent, or exculpatory and impeachment information under *Brady* and *Giglio*, if such statements and information have no relation to the Rule 15 deposition testimony." *Id.* at 116.[4]

For that matter, the Government's response brief exhibits show that it exceeded its Rule 15(e)(3) obligation by timely furnishing its deposition exhibits to Phillips. Doc. 136 (exhibits). Its email correspondence shows that, even though the Government did not have to provide Waddell with trial-deposition documents *until* it examined

---

[4] As that court explained:

> Rule 15(e)(3) requires the government to "provide to the defendant or the defendant's attorney, for use at the deposition, any statement *of the deponent* in the government's possession to which the defendant would be entitled at trial." Fed.R.Crim.P. 15(e)(3) (emphasis added). Under the *Jencks* Act, the government must disclose "any statement" of a government witness called at trial "which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Neither Rule 15 nor the *Jencks* Act suggests a disclosure obligation as sweeping as that urged by [the defendant].

*Cooper*, 947 F. Supp. 2d at 116 (emphasis added).

Folkenberg, *see* Rule 15(e)(3), it nevertheless did so before the deposition.

Defendant's remaining arguments ride the same rails. In essence, Waddell illuminates what he contends to be memory gaps and inconsistencies in Folkenberg's testimony, then cites specific documents (*e.g.*, emails between Waddell and Folkenberg) that he claims were not timely disclosed (via discovery, and also the night before the Folkenberg deposition). Doc. 131 at 2-5. Again, had Waddell not discharged Phillips, these claimed deposition-process defects most likely would never have arisen. And the Government has shown that, through Phillips, it shared -- ahead of the October 30, 2015 deposition -- all of the exhibits that it used at Folkenberg's deposition, mostly through its normal "open discovery" channel.[5]

---

[5]  *See* doc. 136-1 (prosecutor's October 16, 2015 email to Phillips attaching copy of Rule 15 deposition motion, setting forth the Government's intent to depose Folkenberg and detailing the factual allegations supporting the charges against Waddell); doc. 136-2 (August 17, 2015 email to Phillips: "we have all of the physical evidence seized in this case . . . [including] various electronic equipment . . . along with counterfeit gold and other materials. If you would like to review any of these materials before trial, please let me know. . . ."); doc. 136-9 (October 27, 2015 email from prosecutor to Phillips, comprehensively complying with Waddell's specific list of document requests and also noting that "I have also uploaded everything that I have on Folkenberg today, so you can bring him that tomorrow. I will also have a set of copies of the exhibits delivered to you tomorrow for the deposition [the next day]"); doc. 136-10 (October 28, 2015, 3:02 p.m. email from prosecutor to Phillips explaining that "the binder of potential exhibits for Stacy Waddell will be [availed to Phillips] in

It may be that Phillips could have done a better job of timely delivering a useable copy of the Government exhibits to Waddell. Nevertheless, that's a matter between Waddell and Phillips, his agent. More importantly, Waddell demonstrates no Fed. R. Crim. P. 52(a) ("Harmless Error") prejudice because: (a) the Government has shown that he otherwise had plenty of advance access to all of the deposition materials (just not the benefit of the "deposition assemblage" it released on October 28, 2015);[6] (b) there is no suggestion that Waddell's interests would not have been adequately represented had Waddell not discharged Phillips; (c) this was a *trial* deposition, which means that Waddell would not have been able to see these "trial exhibits" ahead of trial in any event (how a lawyer arranges his document presentation to trial witnesses is work product, and the law demands no more than simultaneous, not advance, disclosure of each direct examination exhibit at trial); and (d) in any case Rule 15(e) demanded that nothing more than Folkenberg's

---

about 30 minutes. All of the documents related to Folkenberg were placed on [the U.S. Attorney's document-retrieval web portal], so you should bring him a copy of those materials as well.").

[6] Note that Waddell questioned Folkenberg using exhibits composed of pre-deposition documents provided to him. Doc. 136 at 133-36. In fact, the Government has shown that it had turned over, prior to the deposition and through its open discovery process, all of the deposition documents Waddell now cites. Doc. 136 at 7-10.

"statements" be disclosed at, if not prior to the deposition, and Waddell raises no claims based on those statements. Defendant's "re-deposition" motion, then, also is denied. Doc. 131.

To summarize, the Court **DENIES** defendant's "additional internet access" (doc. 129) and "re-deposition" (doc. 131) motions.

**SO ORDERED**, this 23rd day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA