# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA    )
                                  )
v.                                )     Case No. CR415-095
                                  )
STACY PAUL WADDELL      )

## REPORT AND RECOMMENDATION

Stacy Paul Waddell has been indicted for wire and mail fraud, money laundering, and destroying counterfeit gold coins to prevent their use against him. Doc. 89. With trial in this case looming, the Court has been addressing a steady stream of his motions. *See* docs. 119, 121, 122, 123, 126, 132 & 138. More have since streamed in. Doc. 139 (Motion to Dismiss); doc. 140 (Motion For Additional Time To Review Digital Discovery); docs. 151 & 154 (Motion to Exclude Folkenberg Deposition).

## I. MOTION TO DISMISS

Waddell moves to dismiss the second superseding indictment against him for "Grand Jury Abuse and Prosecutorial Misconduct" grounds. Doc. 139. He cites isolated snippets of grand jury testimony (requiring that this Court seal it, as well as the Government's response, doc. 147, per Fed. R. Cr. P. 6(d)(E)(6)), and insists that the prosecutor

committed misconduct by: placing his prior criminal history before the grand jury; advancing false testimony; and eliciting testimony about a victim's dire health. Doc. 139 at 1-7.

To avoid mini-trials on indictments, courts have erected a reasonably high barrier to such evidentiary challenges. They presume that the grand jury has properly determined probable cause (*i.e.*, that the offense has been committed), so a defendant must rely on a *petit* jury to sort it all out. Hence, "[a]n indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." *United States v. Kaley*, ___ U.S. ___, 134 S.Ct. 1090, 1097 (2014) (quotes and alteration omitted). Because that determination is "conclusive," *id.* at 1099, a defendant generally cannot bring such a challenge in a pretrial, post-restraint hearing (*id.* at 1097-98) until he demonstrates a "sufficiently egregious case of prosecutorial misconduct." *United States v. Holloway*, 778 F.2d 653, 655 (11th Cir. 1985); *see also id.* at 657-59 (dismissal of indictment not warranted on basis that several prospective grand jury witnesses were threatened and harassed by the prosecution to an extent that amounted to prosecutorial misconduct, in

that no witness testified he was coerced to give false testimony before grand jury, and affidavits given by prospective witnesses were largely conclusory in their language); *United States v. Schwartz*, 464 F.2d 499, 511 (2d Cir. 1972) ("As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed"); *Bertuglia v. City of New York*, ___ F. Supp. 3d ___, 2015 WL 5692159 at * 37 n. 12 (S.D.N.Y. Sept. 28, 2015) ("[I]nconsistencies without more are not sufficient to rebut the grand jury presumption [of probable cause].") (citing *Watson v. Grady*, 2168189 at * 15 (S.D.N.Y. May 7, 2015). If follows that:

> [f]alse testimony in the grand jury proceedings is generally insufficient to overcome the presumption of probable cause; there must be a demonstration of bad faith -- more than mere inconsistencies in the testimony -- in order to defeat the grand jury presumption. [*McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006)] (citing as examples of bad faith, *inter alia*, intoxication, conflict of interest, pressuring prosecutor to make deal with putative witness, and altering one's testimony). "Stated differently, in order to overcome the presumption of probable cause arising from a grand jury's indictment, a [defendant], who bears the burden of rebutting this presumption, must adduce sufficient evidence to 'erode the premise that the Grand Jury acted judicially.'" *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2010 WL 8500283, at *6 (S.D.N.Y. Sept. 28, 2010). . . . It is insufficient to show or allege that a [witness] provided false information outside of the grand jury; in order to overcome the presumption of probable cause created by a grand jury indictment, a plaintiff is required to

rebut that presumption by proving fraud, perjury, suppression of evidence or other misconduct in the grand jury.

"[W]here a [defendant's] only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause." *Brandon v. City of New York*, 705 F.Supp.2d 261, 273 (S.D.N.Y.2010) (internal quotation marks and alterations omitted); *see also Peterson v. Regina*, 935 F.Supp.2d 628, 643 (S.D.N.Y.2013) (quoting *Brandon*, 705 F.Supp.2d at 273); *Reid v. City of New York*, No. 00 Civ. 5164, 2004 WL 626228, at *7 (S.D.N.Y. Mar. 29, 2004); *Irish v. City of New York*, No. 09 Civ. 5568, 2010 WL 5065896, at *4 (citing *Hall v. Brown*, 489 F.Supp.2d 166, 173 (N.D.N.Y.2007) ("Plaintiff cannot bootstrap mere inconsistencies in testimony to such a high standard of bad faith by baldly asserting the presence of [perjury] that has no basis in the record."); *Hall*, 489 F.Supp.2d at 173 (noting that a "bald assertion of a fraudulent scheme that finds no support in the record is, without more, insufficient to raise a triable issue of fact as to whether Defendants harbored any bad-faith motive to prosecute [Plaintiff].").

*Watson*, 2015 WL 2168189 at * 15 (quotes and cites omitted).

*Watson* applied a "competing testimony plus" standard: If all the defendant can point to is testimony in competition with that presented to the grand jury (*e.g.*, his own), then a dismissal motion will fail outright. *Id.* at * 16 (citing *Boyd v. City of New York*, 336 F.3d 72, 77 (2nd Cir. 2003). Put another way, an indictment cannot be challenged on plain-vanilla, evidentiary insufficiency grounds. *Id.* (citing *United States v.*

*Williams*, 504 U.S. 36, 54 (1992)); *see also Williams*, 504 U.S. at 49-50 ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."); *id* at 46-47 (even hearsay is permitted; too, a court may not dismiss an otherwise valid indictment simply because the government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 260-61 (1988) (where IRS agents provided "misleading and inaccurate summaries" to the grand jury, the Supreme Court determined there was nevertheless insufficient grounds to dismiss the indictment as there was no evidence of prosecutorial misconduct as to such misleading and inaccurate evidence); *United States v. Strouse*, 286 F.3d 767, 774-75 (5th Cir. 2002) ("What the *Williams* Court's reliance on *Nova Scotia* makes clear, then, is that the misconduct that amounts to a violation of one of those few clear rules [justifying possible dismissal] ... must involve government misconduct.") (bracketed material added)); *United States. v. Funderburk*, 492 F.Supp.2d 223, 259 (W.D.N.Y. 2007)(denying motion to dismiss indictment based upon alleged misleading testimony of grand

jury witness; there was no showing that government solicited or condoned testimony in question).

Here Waddell simply laundry-lists a series of testimonial instances where he believes, for example, that Postal Inspector Plumley falsely testified, doc. 139 at 4 ¶ 13, or related "irrelevant inflammatory and prejudicial facts. . . ." *Id.* ¶13. These assertions fail to make the grade, as he cites nothing to meet the "testimony plus" standard. Plumley, who used to be Waddell's Probation Officer, testified about what his investigation revealed (that Waddell had systematically defrauded multiple victims). Waddell simply calls Plumley a liar but does not irrefutably prove that. *See United States v. Rodriguez*, 765 F.2d 1546, 1559 (11th Cir. 1985) (defendant alleged but "failed to prove" that prosecutor knowing offered perjured testimony before the grand jury); *United States v. Cathey*, 591 F.2d 268, 272 (5th Cir. 1979) (allegation that witness made a false, material statement with the prosecutor's knowledge will not support the dismissal of an indictment absent actual evidence of perjury).

During Plumley's testimony the prosecutor explained *why* Plumley was Waddell's former Probation Officer -- because Waddell had offended

before -- only by way of general background: "Ladies and gentlemen, we offer this testimony not to show propensity on the part of Mr. Waddell to commit this or any other offense, but simply as background to explain the involvement of Inspector Plumley in this case and how he came to know Mr. Waddell.  Tr. at 8.[1]  Waddell objects, but there is nothing improper, let alone inflammatory about that.  The same must be said for that witness's reference to alleged victim Folkenberg's metastatic colon cancer and the need to depose him in the week prior to the Grand Jury proceeding, Tr. at 20.  Though mentioning Folkenberg's condition was not necessary, it was no so inflammatory that it could reasonably said to inflame the grand jurors into improperly determining probable cause.[2]

Waddell's dismissal motion (doc. 139) must therefore be denied. *See United States v. Jones*, 2007 WL 2301420 at * 17 (N.D. Ga. July 18, 2007) ("Jones offers nothing but his own self-serving statements as to the motivations of the government and the witnesses, which are contradicted by the materials which the Court has reviewed in conjunction with the *Daubert* hearing.  He is free to try to establish at

---

[1]  The Grand Jury transcript is attached to doc. 147, which is sealed.

[2]  Waddell complains that the prosecutor violated this Court's *in limine* ruling, doc. 139 at 2, but ignores the fact that such ruling applies only to the *trial* in this case.

trial that the witnesses were coerced at trial such that their testimony against him is not true. The facts now before the Court are neither sufficient to cause dismissal of the indictment nor to conduct a hearing on that issue.").

## II. MOTION TO EXCLUDE FOLKENBERG DEPOSITION

Previously Waddell moved to re-depose Robert Folkenberg, a witness called by the prosecution to testify against him, whom the Government originally deposed on October 30, 2015. Doc. 131; *see* Fed. R. Crim P. 15. The Government said (and Waddell did not dispute) that Folkenberg was terminally ill (he has since died -- on December 24, 2015, doc. 153-1), and thus not likely to testify at the upcoming trial in this case. At the October 22, 2015 hearing, Waddell stated that he wanted to waive his Rule 15(c)(1) right to attend the deposition in person and instead elected to do so by video teleconference. The Court ensured that Waddell's waiver was knowing and voluntary. Doc. 124 at 183-94. To that end, it assured him that he was entitled to personally appear at the deposition at the Government's expense. *Id.* at 190; *see also* Rule 15(d) (attendance at government's expense). Nevertheless, Waddell chose to

participate via video connection. Doc. 124 at 193. He then extensively questioned Folkenberg. Doc. 137-1 at 118-154, 155-176, 182-195.

In seeking an "emergency" re-deposition, Waddell insisted that the Court and Government assured him he would get to timely see, ahead of the deposition, the Government's deposition exhibits and the counterfeit gold coins he's alleged to have used in defrauding Folkenberg. In fact, he contended that he waived his attendance right:

> *on the conditions* [sic] that he be allowed to participate via video *and* that he be allowed to inspect any items to be used during the deposition. Defendant specifically requested to inspect the replica coins in the government's possession. After the court heard defendant's request the government agreed to allow defendant to inspect the [gold] coins [that are part of the Government's case against him].

Doc. 131 at 1 (emphasis added).

As this Court previously determined, that's simply not true. At the October 22, 2015 hearing, the Government *resisted* Waddell's personal attendance waiver. Doc. 124 at 185-86. The Court asked him if he understood the Government's resistance -- the Government had just expressly warned him that it would present to Folkenberg some "physical evidence that you will not have the ability to feel or touch. That will make it more difficult for you to conduct a cross-examination."

Doc. 124 at 191. When the Court asked Waddell if he heard that explanation, *id.* at 191, he replied: "Yes, sir. Would it be possible for the government to show me the evidence while I'm here today that they're going to show [Folkenberg]?" *Id.* at 192. The Court responded that it doubted the evidence was then in the courtroom. Government counsel confirmed that and in fact reminded the Court about its chain-of-custody needs. *Id.* The Court then answered Waddell's question:

> THE COURT: Well, sure, if they'd brought all their evidence today, which is vast, they could pull it out of their [brief]case and show it to you. But they don't have that today.
>
> And the only option would be for the government to send some agent out there [to the jail] with that evidence to show it to you in advance of the deposition. But [the prosecutor's] carrying the evidence with him to Florida, *so it won't* be the day of the direct examination of that witness down in Florida. Do you understand?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And even still, you wish to arrange a videoconference?
>
> THE DEFENDANT: I think a videoconference would suffice, Your Honor.
>
> THE COURT: All right. Well, we will go forward and accept your waiver.

Doc. 124 at 192-193 (emphasis added).[3] Thus, there was no such "condition."

Waddell next claimed that at around 5:00 p.m. the night before the deposition, standby-counsel Robert P. Phillips, III, brought him a flash drive with additional discovery, including a transcript of a jail call between Waddell and Folkenberg. Yet, he was (due to jail law library access restrictions) unable to review this information until after the deposition. Doc. 131 at 1. Again, this Court ruled, Waddell waived his right to complain -- *twice* -- at the hearing where he waived his deposition attendance rights, and also by discharging his attorney, who otherwise would have handled the deposition for him (the same "internet access" rationale applies here -- one who gives up the benefit of counsel, let alone

---

[3] Waddell also complained that he was not shown the gold coins shown to Folkengberg, but this Court deemed that assertion to be baseless. The Government, it explained, had availed to Waddell the counterfeit gold coins for his (and his lawyer's) review and inspection months prior to the deposition, doc. 136-2, and yet neither pursued same. And after the October 22, 2015 hearing, the Government provided Waddell with photographs of the counterfeit gold coins well in advance of the deposition. *See* doc. 136-7. Waddell made other requests for discovery from the government during this same time frame, docs. 136-8 & 136-9, and even corresponded with the Government through standby-counsel Robert P. Phillips, III, about exhibits during the impending deposition -- after it had provided those photographs to him. *See* docs. 136-11, 136-12 & 136-13. Yet, he never asked to inspect the gold coins depicted in the photographs in any of those requests or emails. Nor has he explained what difference it would have made had he seen the actual coins prior to the deposition.

personal-attendance rights at a Rule 15 deposition, must endure the accompanying limitations).  Doc. 138, *reported at United States v. Waddell*, ___ F. Supp. 3d ___, 2015 WL 9311652 at * 3 (S.D. Ga. Dec. 23, 2015).

In any event, the Court further concluded that Waddell complained too much -- the Government has shown that it gave him more than Rule 15 demanded.  In pertinent part Rule 15(e) provides:

(e) **Manner of Taking**. Unless these rules or a court order provides otherwise, a deposition must be taken and filed in the same manner as a deposition in a civil action, except that:

*   *   *   *

(2) The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial.

(3) The government must provide to the defendant or the defendant's attorney, for use at the deposition, any *statement* of the deponent in the government's possession to which the defendant would be entitled at trial.

Rule 15(e) (emphasis added).  Hence, the Government's only trial deposition obligation was to provide Waddell with any Folkenberg *statements* -- something Waddell did not complain about here (even at that, the rule does not say *when* the statements must be provided).

The case law, the Court pointed out, confirms the statements-only requirement. The court in *United States v. Cooper*, 947 F. Supp. 2d 108 (D.D.C. 2013), rejected a defendant's argument that he could not meaningfully participate in pretrial depositions until all discovery had first been completed; "there is no sound reason for requiring pre-deposition disclosure of statements of witnesses other than the Rule 15 deponent, or exculpatory and impeachment information under *Brady* and *Giglio*, if such statements and information have no relation to the Rule 15 deposition testimony." *Id.* at 116.[4]

For that matter, the Government's response brief exhibits showed that it exceeded its Rule 15(e)(3) obligation by timely furnishing its deposition exhibits to Phillips. Doc. 136 (exhibits). Its email correspondence showed that, even though the Government did not have to provide Waddell with trial-deposition documents *until* it examined

---

[4]  As that court explained:

> Rule 15(e)(3) requires the government to "provide to the defendant or the defendant's attorney, for use at the deposition, any statement *of the deponent* in the government's possession to which the defendant would be entitled at trial." Fed.R.Crim.P. 15(e)(3) (emphasis added). Under the *Jencks* Act, the government must disclose "any statement" of a government witness called at trial "which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Neither Rule 15 nor the *Jencks* Act suggests a disclosure obligation as sweeping as that urged by [the defendant].

*Cooper*, 947 F. Supp. 2d at 116 (emphasis added).

Folkenberg, *see* Rule 15(e)(3), it nevertheless did so before the deposition.

Defendant's remaining arguments, the Court concluded, rode the same rails. In essence, Waddell illuminated what he contended to be memory gaps and inconsistencies in Folkenberg's testimony, then cited specific documents (*e.g.*, emails between Waddell and Folkenberg) that he claims were not timely disclosed (via discovery, and also the night before the Folkenberg deposition). Doc. 131 at 2-5.[5] Again, had Waddell not discharged Phillips, these claimed deposition-process defects most likely would never have arisen. And the Government showed that, through Phillips, it shared -- ahead of the October 30, 2015 deposition -- all of the exhibits that it used at Folkenberg's deposition, mostly through its normal "open discovery" channel.[6]

---

[5] His latest motion (doc. 154) -- for leave to amend his Exclusion motion, doc. 151 -- simply provides Waddell's running commentary on the reliability of Folkenberg's memory and evidentiary objections (*e.g.*, leading questions, coaching) that Waddell is free to raise at trial in this case. Otherwise, the Court grants the motion (doc. 154) to *amend* doc. 151.

[6] *See* doc. 136-1 (prosecutor's October 16, 2015 email to Phillips attaching copy of Rule 15 deposition motion, setting forth the Government's intent to depose Folkenberg and detailing the factual allegations supporting the charges against Waddell); doc. 136-2 (August 17, 2015 email to Phillips: "we have all of the physical evidence seized in this case . . . [including] various electronic equipment . . . along with counterfeit gold and other materials. If you would like to review any of these materials before trial, please let me know. . . ."); doc. 136-9 (October 27, 2015 email

Finally, this Court concluded:

> It may be that Phillips could have done a better job of timely delivering a useable copy of the Government exhibits to Waddell. Nevertheless, that's a matter between Waddell and Phillips, his agent. More importantly, Waddell demonstrates no Fed. R. Crim. P. 52(a) ("Harmless Error") prejudice because: (a) the Government has shown that he otherwise had plenty of advance access to all of the deposition materials (just not the benefit of the "deposition assemblage" it released on October 28, 2015);[7] (b) there is no suggestion that Waddell's interests would not have been adequately represented had Waddell not discharged Phillips; (c) this was a *trial* deposition, which means that Waddell would not have been able to see these "trial exhibits" ahead of trial in any event (how a lawyer arranges his document presentation to trial witnesses is work product, and the law demands no more than simultaneous, not advance, disclosure of each direct examination exhibit at trial); and (d) in any case Rule 15(e) demanded that nothing more than Folkenberg's "statements" be disclosed at, if not prior to the deposition, and Waddell raises no claims based on those statements. Defendant's "re-deposition" motion, then, also is denied. Doc. 131.

Doc. 38 at 11-12, *Waddell*, 2015 WL 9311652 at * 5.

---

from prosecutor to Phillips, comprehensively complying with Waddell's specific list of document requests and also noting that "I have also uploaded everything that I have on Folkenberg today, so you can bring him that tomorrow. I will also have a set of copies of the exhibits delivered to you tomorrow for the deposition [the next day]"); doc. 136-10 (October 28, 2015, 3:02 p.m. email from prosecutor to Phillips explaining that "the binder of potential exhibits for Stacy Waddell will be [availed to Phillips] in about 30 minutes. All of the documents related to Folkenberg were placed on [the U.S. Attorney's document-retrieval web portal], so you should bring him a copy of those materials as well.").

[7] Note that Waddell questioned Folkenberg using exhibits composed of pre-deposition documents provided to him. Doc. 136 at 133-36.

Citing Folkenberg's death, Waddell now moves to exclude his deposition from trial. Doc. 151, *as amended*, doc. 154. In substance he rehashes previous arguments, then supplements them with more discovery-production complaints unaccompanied by an adequate showing of prejudice. He also, as noted *supra*, raises witness-credibility issues and evidentiary objections that may be raised at trial, but support no relief here -- the Court denies this motion (doc. 151) for the reasons set forth above and in the Government's response brief, doc. 153. Waddell fails to acknowledge the Court's prior illumination of the disclosure limits (Folkenberg's statements), and also fails to show how he was prejudiced, for example, by not being able to pre-examine the specific gold coin shown to Folkenberg, much less the Folkenberg emails he now cites, doc. 151 at 6. And the Government correctly refutes Waddell's claim that he was not timely provided an article about Folkenberg that Waddell could have used to impeach him, doc. 151 at 6-7.[8]

Nevertheless, one portion of Waddell's motion warrants further discussion. The Government obtained a Second Superseding Indictment,

---

[8]  It shows that Waddell had pre-deposition internet access, and had been advised by government discovery, that impeaching information about Folkenberg existed. Too, it was easily retrievable online. Indeed, there is even a full Wikipedia entry about him: https://en.wikipedia.org/wiki/Robert_S._Folkenberg

and thus added charges, just days after Folkenberg's deposition. Doc. 137 (October 30, 2015 deposition); doc. 89 (November 5, 2015 Second Superseding Indictment). Waddell contends that the deposition should be excluded because he waived his attendance right on his understanding that Folkenberg was only a victim in Count One of the First Superseding Indictment. That Count was dismissed, he explains, and substantive Counts related to Folkenberg were added *after* Folkenberg was deposed. Hence, Waddell concludes, he cannot be said to have waived his attendance rights consistent with Due Process. Doc. 151. He also quotes the undersigned (part of the above excerpt) to underscore what he in effect deems to be government machinations aimed at defeating his Confrontation Clause[9] and Due Process[10] rights regarding the new charges:

---

[9]  As another court explains:

In *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *See also Hardy v. Cross*, ___ U.S. ___, 132 S.Ct. 490, 493, 181 L.Ed.2d 468 (2011); *Giles v. California*, 554 U.S. 353, 357, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). The Confrontation Clause applies only to testimonial hearsay. It has no application to nontestimonial statements, see *Davis v. Washington*, 547 U.S. 813, 821–22, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), or to statements admitted for a non-hearsay purpose, *see Crawford*, 541 U.S. at 59 n. 9.

Defendant has a constitutional right to confront his accuser's. [sic] The government misled defendant as to the purpose of seeking Mr. Folkenberg's deposition. The government only sought the deposition upon learning of Mr. Folkenbergs imminent death on October 7, 2015. The government did not seek to obtain a deposition until his health had deteriorated. The government had made no attempt to indict the defendant prior to learning of Mr. Folkenberg's imminent death, when in fact the evidence used to obtain the indictment was known and in the governments' possession in March 2015 prior to both the original and superseding indictments. The government failed to provide defendant with discovery used at the deposition until 17 hours prior, when in fact they had possession of it for many months. The government strategically provided discovery, favorable to defendant, in digital form, knowing the defendant could not review prior to deposition. The government failed to allow defendant to inspect the physical evidence prior to the deposition, although defendant made a specific motion in July, requested same at October 22, 2015 hearing, was advised by government that they would "attempt to make arrangements" and advised by the Court that the only option "would be for the government to send some agent out there with that evidence to show it to you in advance of the deposition. But he's carrying the evidence with him to Florida,

---

*Carrion v. McDonald*, 2012 WL 6840585 at * 22 (C.D. Cal. Aug. 24, 2012). "A deceased witness is 'unavailable' under *Crawford*. *See, e.g* ., *Crawford*, 541 U.S. at 45; *United States v. Myton*, 224 Fed. Appx. 125, 129 (2d Cir.2007) (witness who was dead at time of trial was clearly 'unavailable')." *Ramos v. Wipson*, 2014 WL 3130036 at * 10 (C.D. Cal. June 4, 2014). And there is no question here that Folkenberg's deposition, if introduced at Waddell's trial, will advance testimonial statements.

[10] Some courts differentially reference Confrontation Clause rights (confront accusers *at trial*) and Due Process rights (confront accusers at *sentencing*), *see United States v. Fields,* 483 F.3d 313, 328 (5th Cir. 2007)*,* but most reference "Due Process" when reminding that "[t]he Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965)." *Babcock v. Metrish*, 2009 WL 4884969 at * 7 (E.D. Mich. Dec. 11, 2009). Otherwise, the analysis here is the same whether the Court references either clause.

so it won't be the day of the direct examination of the witness down in Florida. Do you understand?" The government had 8 days in which Agent Rothschild could have simply transported the coins to the jail less than 5 miles from his office for defendant's review. A review of the video transcript reveals that Mr. Folkenberg's memory was faulty. Numerous times Mr. Folkenberg's story changed and conformed to the leading questions by the government. In *Crawford* the Court held that such previous testimony should be admitted only if it's reliable. Reviewed in its entirety, it cannot be said that the testimony is reliable. We do not know if Mr. Folkenberg's medication could be a direct cause of the serious memory issues. Defendant has a constitutional right to confront his accuser and his confrontation of Mr. Folkenberg was not based on the alleged charges in the Second Superseding indictment. The defendant did not intelligently waive his right to appear at the deposition. The defendant's rights to due process were denied when the government withheld discovery, provided some discovery 17 hours prior to deposition, and provided discovery in digital form. The government only chose to seek indictment for charges relating to Mr. Folkenberg after learning of his imminent death, a calculated decision solely for the purpose to gain an advantage and sympathy from the Court and jury. Each and every complaint defendant is making is a direct result of the government's actions and inactions. The video deposition should therefore be ruled inadmissible. Wherefore defendant prays that the deposition be ruled inadmissible.

Doc. 151 at 7-8.

In fact, however, the factual allegations and prosecution theory in both Indictments are substantially the same with respect to the core accusation: That by mail and wire, Waddell defrauded his victims out of their money and wire-transferred it to his own gambling account at casinos, then tampered with what would become evidence to conceal his

crimes. *Compare* doc. 44 (First Superseding Indictment, including wire and mail fraud, conspiracy, aiding and abetting, evidence tampering, and a Criminal Forfeiture Count) *with* doc. 89 (Second Superseding Indictment bearing the same core allegations but adding more factual detail as to how Waddell defrauded his victims, then *dropping* the Conspiracy count but adding "Money Laundering" and "Telemarketing Fraud" Counts).

For that matter, the law does not supply defendants like Waddell with a "blank check" safeguard against all risks when they waive their right to attend a Rule 15 deposition (there was no way the Court, in warning him, could warn him about each specific permutation that would unfold in this case). The Government thus correctly argues that, so long as Waddell had (with respect to the deposition before and after the two indictments) a similar defense motive and opportunity to cross-examine Folkenberg on the core substance of the charges ultimately brought, his Confrontation rights are not violated even if the Government (via subsequent indictment) marginally moves the "accusational goal posts." *See* doc. 153 at 18-27 (Government's brief recounting, step-by-step, how: (a) the substance of the charges and

supporting factual allegations remained the same; (b) the Government timely furnished Waddell, mostly through discovery, all of the documents he needed to meaningfully cross-examine Folkenberg; and (c) Waddell in fact consumed some two hours extensively cross-examining him during the deposition).[11]

---

[11]    These facts fall comfortably within the "opportunity to cross-examine" margin established by Confrontation Clause case law:

> [T]he test is *not* whether the defendant has been provided with an ideal cross-examination opportunity, one in which his or her attorney has complete knowledge of the evidence and clairvoyant understanding of how the trial will play out. *See United States v. Koon*, 34 F.3d 1416, 1427 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("The failure of a defendant to discover potentially useful evidence at the time of the former proceeding does not constitute a lack of opportunity to cross-examine."). Rather, *Crawford* simply requires an opportunity to cross-examine witnesses testifying against the accused. 541 U.S. at 57, 124 S.Ct. 1354.

*United States v. Caramadre*, 882 F. Supp. 2d 295, 301 (D.R.I. May 15, 2012) (emphasis added); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (quotes and cite omitted); *see also United States v. Santos*, 481 F. App'x 574, 577-78 (11th Cir. 2012) (defendant had opportunity and similar motive to cross-examine witness during deposition, where defendant and his attorney were present at the deposition, questioned witness extensively about her memory loss and health problems, and defendant received a FBI report indicating witness was not able to identify any health care employees in one photographic lineup, even though defendant did not receive, prior to the deposition, another FBI report indicating that witness had not been able to identify *defendant* in a photographic lineup).

> [I]n "virtually all subsequent proceedings, examiners will be able to suggest lines of questioning that were not pursued at a prior proceeding." *United States v. DiNapoli*, 8 F.3d 909, 914 (2d Cir.1993). The fact that these alternative lines of questioning exist is not determinative in resolving the

Finally, the Court rejects Waddell's contentions that simply go to Folkenberg's credibility. "*Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L.Ed.2d 597 (1980), which had emphasized whether statements were 'trustworthy,' replacing it with a new test that focused on whether statements were 'testimonial.' *See Jensen v. Pliler*, 439 F.3d 1086, 1088 (9th Cir. 2006) (citing *Crawford*, 541 U.S. at 68, and *Ohio v. Roberts*, 448 U.S. at 66)." *Ramos*, 2014 WL 3130036 at * 9. He thus has failed to show the prejudice that the law demands in this context. *United States v. Martinez*, 198 F. App'x 704 (10th Cir. 2006) (no abuse of discretion in ordering the videotaped deposition of burglary victim, during prosecution for being a felon in possession of a firearm and possession of a stolen firearm, despite the government's eleventh hour notice to defendant; defendant was able to cross-examine victim about pertinent facts, and defendant did not explain what he would have done given more notice).

---

ultimate question of whether the defendant had a prior opportunity, and similar motive, to cross-examine the unavailable witness.

*United States v. Mathurin*, 2013 WL 4047601 at * 1 (S.D. Fla. Aug. 9, 2013); *Longoria v. McDonald*, 2010 WL 1506552 at *8-9 (C.D. Cal. Mar. 3, 2010) (no Confrontation Clause violation in admission of unavailable witness' preliminary hearing testimony at trial where counsel at preliminary hearing had allegedly dissimilar motive because he had not yet fully developed theory of defense).

## III. ADDITIONAL TIME

Waddell wants this Court to direct the local jail where he is currently being housed to permanently relocate him into its infirmary so he can better utilize electric outlet access for his laptop, which he needs to review and organize over 300 GB of discovery material. Doc. 140. The Court **DENIES** this motion because this problem would not exist but for Waddell's discharge of the Court-appointed attorney to represent him. As previously noted, access to a whole host of legal research and case-development resources is lost when counsel is discharged. *Waddell*, 2015 WL 9311652 at *1 n. 2 (collecting cases). For that matter, the jail "has advised that it is simply unable to accommodate Waddell's special request. Resources at the Chatham County Jail are limited, demand for bed space in the infirmary is great, and providing a laptop computer to an inmate creates security risks at the institution. For these and other reasons, the Chatham County Jail is unable to accommodate Waddell's request." Doc. 155 at 2 (cites omitted).

## IV. CONCLUSION

To summarize, the Court **DENIES** Stacy Paul Waddell's Motion For Additional Time To Review Digital Discovery, doc. 140, and Motion

to Exclude the Folkenberg Deposition.  Doc. 151.  The Court **GRANTS** his motion to amend his "Exclude" motion.  Doc. 154.  Finally, his Second Motion to Dismiss (doc. 139) should be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this   26th   day of January, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA