# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR415-095 |
| | ) | |
| STACY PAUL WADDELL | ) | |

## ORDER

Stacy Paul Waddell has been indicted for defrauding others via online precious metal sales. Doc. 210. The Government has provided open-file discovery and now moves for reciprocation. Doc. 215. Waddell opposes. Doc. 232 at 5.

## I. BACKGROUND

During an April 22, 2016 meeting to provide Waddell access to his Government-seized cell phone, he provided the Government with transcripts of what he claims are telephone calls between him and several individuals (now government witnesses) who attempted to purchase precious metals from Waddell. Doc. 215 at 1; doc. 232 at 3-4. The Government asked for the recordings that underlay the transcripts, but Waddell claims not to have them. Doc. 232 at 28 ("Currently I am not in possession or control of any of the calls or portions thereof.").

That claim stands in some tension with other Waddell statements. On March 28, 2016, in the same breath as he disclaimed possession, Waddell stated that the telephone "service provider" he used for his businesses "advised that the recorded calls between [Waddell] and potential/actual customers ha[ve] been preserved and will be available for use at trial." Doc. 232 at 28. The provider was to send "them on cd's" to the jail, but that apparently didn't happen, at least not before Waddell turned over the transcripts. *See id.* at 27 (email dated April 28, 2016, six days after the Government received the transcripts, stating that "the jail has not received the audio CD's").

The provider, or whoever possessed copies of the recorded calls, sent them somewhere, however. By April 22, 2016 Waddell had made transcripts of "the pertinent calls" (doc. 232 at 27) and provided them to the Government. When he turned those over, the Government asked if "these were the calls recorded through Ring Central." Doc. 232 at 30. Waddell affirmatively replied. *Id.* But when the Government last month contacted Ring Central -- a business telephone service provider -- the company revealed that it only kept recordings for 90 days. *Id.* Because

the transcripts covered calls that occurred in 2014, Ring Central no longer had recordings and hadn't had recordings for well over a year.

Confronted with that information (and the present motion), Waddell coyly informed the Government that he never "indicate[d] who the current custodian was for the calls." Doc. 232 at 30. Rather, he "agreed when [the Government] asked if these were the calls recorded through Ring Central." *Id.*

"Although Waddell claims he does not have possession, custody, or control of the audio-recordings, the fact that he has transcripts," says the Government, "belies that claim." Doc. 215 at 2. It urges the Court to order their disclosure "assuming [they] actually exist." Going further, it also requests that the Court order Waddell to produce, by May 20, 2016, any "evidence that he intends to use at trial, whether it be during his case in chief, rebuttal or to impeach." *Id.* at 3.

As discussed above, Waddell flatly denies possessing the recordings that he says generated the transcripts, though he promises to "comply with discovery and provide any calls he intend[s] to use at trial for his case-in-chief." Doc. 232 at 4. Four paragraphs later, however, he states that any recorded calls "would only [be used] in rebuttal or to impeach

3

government witnesses if needed," the obvious implication of which is that Waddell won't produce any recorded calls. *Id.*

## II. ANALYSIS

Under Fed. R. Crim. P. 16(a)(1)(E), the Government, *"[u]pon a defendant's request"*

> must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

(emphasis added).

Waddell has repeatedly asked to inspect qualifying items. *See, e.g.*, doc. 232 at 2 ("On November 30, 2015 defendant filed *pro se*, a motion for discovery and inspection. (doc. 111)."). Those requests triggered Rule 16(b)(1)(A), which provides that:

> [i]f a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:

4

>    (i) the item is within the defendant's possession, custody, or control; and
>
>    (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A). "If a [defendant] fails to comply with [Rule 16(b)(1)(A)], the court may . . . order th[e defendant] to permit the discovery or inspection . . . [or] prohibit [him] from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d).

Despite his inconsistent statements about who possesses the call records that underlie the transcripts, Waddell maintains it isn't him. Doc. 232 at 4. Certainly he (or someone) must at some point have *listened* to them in order to create transcripts. And his possession of transcripts, as the Government rightly points out (doc. 215 at 2), casts some doubt on Waddell's "it's not me" protestations.

But mere doubt isn't proof that someone is lying. And the Court cannot force disclosure of something a defendant does not have. Waddell says he lacks possession, custody, or control over the audio recordings at issue, and the Court must take him at his word for now. Nevertheless, if at any time Waddell comes to possess or control the recordings, and he

intends to use them in his case-in-chief, he *must* produce them to the Government immediately. *See* Fed. R. Crim. P. 16(b)(1).

Failure to produce the recordings under those circumstances exposes Waddell to sanctions under Rule 16(d). As noted, those can include exclusion of the evidence he fails to disclose. *See* Fed. R. Crim. P. 16(d)(2)(C); *United States v. Gray-Burriss*, 791 F.3d 50, 55 (D.C. Cir. 2015) ("Rule 16 gives trial judges the option of suppressing evidence as a result of [a party's] discovery violation. . . .") (internal quotes omitted); *United States v. Young*, 248 F.3d 260, 270 (4th Cir. 2001) ("Exclusion of undisclosed evidence is a permissible sanction for a violation of Rule 16."). In *Young*, for example, the defendant attempted to introduce an undisclosed audiotape of a conversation between a witness and himself just before defense counsel's direct questioning of the witness. 248 F.3d at 269. Because of that nondisclosure:

> not only was the sanction of exclusion explicitly authorized by the Rule, but it was also an appropriate response to defense counsel's conduct. Young knew of the audiotape prior to trial and could have disclosed it easily. However, he did not provide notice of the tape until literally moments before the close of the government's case-in-chief. As a result, the district court could have reasonably concluded that the government -- which unlike Young, disclosed all evidence subject to the discovery order prior to trial -- was prejudiced because it was unable to coordinate its case to account for the audiotape.

*Young*, 248 F.3d at 270; *see also United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1978) (defendant sought to withhold documents until he decided whether or not to testify in his own defense -- *i.e.*, until after the prosecution rested; court precluded documents' introduction unless defendant timely produced them pursuant to reciprocal discovery).

Precisely the same could happen in this case if Waddell comes into possession or control (hence, constructive possession)[1] of the recordings and attempts to sandbag the Government and Court by last-minute introducing them during his own case-in-chief.[2] That sort of trial by ambush plainly violates the Rules and will not be tolerated.

Given the level of subtlety in the case law, it is worth pausing to note the distinctions between "case-in-chief," "rebuttal," and "impeachment." Recall that reciprocal disclosure obligations only exist if

---

[1] "[P]ossession, custody, or control" for purposes of Rule 16(b)(1)(A) is a broad concept that Waddell should not construe narrowly. It encompasses far more than actual physical possession. Simply having the ability to access a document can trigger reciprocal discovery obligations under Rule 16. *See United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) (defense attorney subpoenaed medical record but did not reveal its existence until he had "actual possession. . . . Once the record was subpoenaed, counsel had the power of the court behind him and had the ability to gain imminent possession. This control gave rise to an obligation" under Rule 16, and its violation warranted exclusion of the record).

[2] He may well find even the transcripts excluded if he cannot properly authenticate them, which may prove hard to do without the recordings.

7

the defendant possesses a document or object *and* intends to use it in his *case-in-chief*. Fed. R. Crim. P. 16(b)(1)(A). Even if a defendant has possession, the Rules do not require disclosure where a document's intended use is solely for impeachment purposes. *See United States v. Moore*, 208 F.3d 577, 579 (7th Cir. 2000) (Easterbrook, J.).

The key to understanding when something is being introduced in a case-in-chief versus for impeachment is not the timing of its introduction. Simply presenting evidence during cross-examination of a government witness does not automatically qualify it as impeachment evidence. It must be used, for example, "as a prior inconsistent statement . . . that would undermine the witness' credibility." *Id.* So if a defendant tries to introduce evidence through a government witness during cross-examination for purposes of proving his innocence, that's *not* impeachment but in fact part of the defendant's case-in-chief. *See Young*, 248 F.3d at 270 (trial court properly excluded audiotapes introduced during cross-examination of government witness, for purposes of proving that the witness, not the defendant, committed a murder, because the defendant's "true intent was to introduce the tape as 'evidence-in-chief'" of his innocence).

A hypothetical using this case further illustrates the impeachment/case-in-chief distinction. Assume that prior to trial Waddell never discloses the audio recordings underlying the transcripts and that he cannot authenticate the transcripts absent the recordings. The Government then begins its case-in-chief presentation, which includes testimony from the Waddell customers on the recordings. If Waddell attempts to introduce the recordings during cross-examination for purposes of showing that he never defrauded the witness, that use would *not* be for impeachment -- it would be evidence-in-chief of Waddell's innocence and properly excludable under Rule 16(d). *Young*, 248 F.3d at 270. If, however, he contrasted the witness' statements on the recordings with testimony given at trial -- for example, to show that the testimony was inconsistent with what the witness said on the recording -- that would be impeachment use and thus not subject to the reciprocal discovery obligation that the Government seeks to enforce here.

Waddell knows this distinction. He states that he "does not intend to use the recorded calls in his case-in-chief," and "would only introduce

them in rebuttal or to impeach government witnesses."[3] Doc. 232 at 4. The Court thus presumes that he now understands his Rule 16(b)(1)(A) obligations require him to disclose the actual recordings prior to trial if that proves not to be the case.

One final point: Waddell "asserts that the government is not entitled to [the recordings] as they would not be subject to disclosure pursuant to Rule 16(b)(2)(B)(ii) and (iii) as the recordings would constitute statements by government or defense witnesses or prospective witnesses." Doc. 232 at 4. Not so. The term "statement" does not encompass a person's words from a conversation with the defendant that occurred *before* the person became a witness or prospective witness and the defendant became a defendant. Instead, it covers only those statements -- whether to the defendant, defense counsel, or the government -- made by a person in the context of investigating or defending against a crime.

---

[3] Of course, he also represents that he only has those calls "provided by the government through discovery," and that "he is not in possession, custody, or control of the recordings which the government seeks." Doc. 232 at 4. Discussing the use of something not possessed suggests, but does not prove, past possession at a minimum. Where there's smoke there's often fire, but absent proof of flames the Court cannot penalize Waddell for lying to this Court. Nevertheless, if it later becomes apparent that Waddell had possession of the recordings and lied about it, the Court will not hesitate to hold him accountable for his deception.

The text of Rule 16, which in no small part is aimed at distinguishing between mere factual history and *work product*, supports that understanding. Defendants, under Rule 16(b)(2), receive similar (indeed, greater) disclosure protections for witness statements as those afforded the prosecution under Rule 16(a)(2). *Compare* Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses. . . ."), *with* Fed. R. Crim. P. 16(b)(2) ("Rule 16(b)(1) does not authorize discovery or inspection of . . . a statement made to the defendant, or the defendant's attorney or agent, by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness."). Both provisions in turn contain language similar to that in the Jencks Act, 18 U.S.C. § 3500, another work-product oriented protection, which states that:

> no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection *until* said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a) (emphasis added). Indeed, Rule 16(a)(2) -- the provision protecting against defense discovery overreach -- does not

"authorize the discovery or inspection of statements made by prospective government witnesses *except as provided in* [*the Jencks Act*]." (emphasis added).

The similar protections provided by 16(b)(2), 16(a)(2), and limited in the Jencks Act -- that statements made by witnesses or prospective witnesses are not discoverable -- suggests that "statement" means the same thing in all three provisions. *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) (the same term used in different provisions of a larger statute "should be construed, if possible, to give it a consistent meaning"). And "statement" under the Jencks Act refers only to statements made by witnesses, not ordinary people who lack affiliation with criminal legal action. *See* 18 U.S.C. § 3500(e).

Rule 16(b)(2)'s acknowledged purpose reinforces that "statement" does not include conversations like those Waddell had with his former customers. When that provision first became law in 1975, the advisory committee made clear that "Rule 16(a)(2) and (b)2) define certain types of materials ('work product') not to be discoverable." Fed. R. Crim. P. 16 advisory committee's notes (1975 enactment); *see also Johnson v. Gross*, 611 F. App'x 544, 548 (11th Cir. 2015) (observing that Fed. R. Civ. P. 26,

in protecting attorney work product, provides sufficient protection to witness statements such that allowing their introduction after the defendant failed to identify documents as statements in a privilege log did not "subvert Rule 16"); *United States v. Harry*, 2014 WL 6065705 at * 4 (D.N.M. Oct. 14, 2014) ("Rule 16(b)(2) is considered to be the work product exception[ ] to the general discovery requirements.") (quotes omitted). And "work product," by its very nature, cannot include statements made by people before "work" -- in this instance investigating or defending against a crime -- ever is contemplated, much less begins. Waddell's conversations with government witnesses that occurred during the course of the charged scheme to defraud are not "statements" for purposes of Rule 16(b)(2) and thus are discoverable under the circumstance outlined above.

Because Waddell professes to not possess or control the recordings, the Court **DENIES** the Government's motion for reciprocal discovery.[4] Doc. 215. That said, the Court again admonishes Waddell that if he's

---

[4] Again, even if Waddell possessed the recordings, the Court could not order their disclosure if he only intended to use them for impeachment purposes. *See* Fed. R. Crim. P. 16(b)(1)(A)(ii); *Moore*, 208 F.3d at 579. The Government's blanket request for all "evidence [Waddell] intends to use at trial, whether it be during his case-in-chief, rebuttal, or to impeach" (doc. 215 at 3) thus exceeds Rule 16's limits on what is discoverable.

lying about (actual if not constructive) possession or control of the recordings and later tries to introduce them during his case-in-chief, that evidence will be subject to exclusion.

**SO ORDERED**, this  25th  day of May, 2016.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA