IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA )
)
v. ) CASE NO. CR415-095
)
STACY PAUL WADDELL, )
)
Defendant. )
)

FILED
Scott L. Poff, Clerk
United States District Court

By James Burrell at 2:14 pm, Mar 05, 2018

## O R D E R

Before the Court are Defendant Stacy Paul Waddell's Motion for New Trial (Doc. 322), Motion for Judgment of Acquittal[1] (Doc. 328), and Amended Motion for New Trial (Doc. 358). For the following reasons, Defendant's motions are **DENIED**.

## BACKGROUND

On May 18, 2015, Defendant was named in an indictment charging him with one count of conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349. (Doc. 3 ¶¶ 5-6.) The Government amended the charges several times by superseding the previous indictment. (Doc. 44; Doc. 89; Doc. 210; Doc. 244.) Ultimately, Defendant was charged in a Fourth Superseding Indictment with four counts of wire

---

[1] Defendant filed a Motion to Withdraw his Motion for Judgment of Acquittal. (Doc. 351.) However, Defendant later notified this Court that he no longer wished to withdraw that motion. (Doc. 376 ¶ 5.) Accordingly, Defendant's Motion to Withdraw is **DISMISSED AS MOOT**.

fraud, one count of possession and sale of counterfeit coins, and one count of tampering with documents or proceedings. (Doc. 244.)

During the five-day jury trial, the Government presented thirty-four witnesses and approximately one hundred exhibits. These witnesses included the live testimony of Dana Golden, Wesley Bassil, Edward Peng, Scott Horton, Norm Carnovale, Erik Perozo, and other victims of Defendant's fraud scheme. The Government presented the testimony of another victim, Robert Folkenberg, through an edited deposition taken after Mr. Folkenberg was diagnosed with terminal cancer. In addition, numerous records custodians testified concerning various phone calls between the victims and Defendant, as well as the movement of funds from the victims to accounts controlled by Defendant.

The general narrative from these witnesses was that Defendant engaged in a scheme to entice victims to purchase precious metals in the form of gold and silver bullion coins issued by the United States Mint. As part of the scheme, Defendant attempted to reach potential victims by maintaining a website and advertising on craigslist, as well as relying on word of mouth. Defendant would advertise precious metals for sale at below market value and promise quick delivery following receipt of the purchase price,

usually by wire transfer. However, Defendant often did not deliver the precious metals as promised. On other occasions, Defendant delivered counterfeit coins that were composed of only base metals.

After Defendant was arrested, he directed Justin Drotleff to locate and destroy some counterfeit coins located in Defendant's car. At the time, authorities were executing a search warrant for Defendant's residence. The coins were under the trunk carpeting of Defendant's wrecked vehicle, which was parked in the garage. Exercising his better judgment, the individual informed authorities as to the location of the coins.

The Court provided Defendant with appointed counsel in this case. However, Defendant elected to represent himself at trial. Unsurprisingly, Defendant was convicted on all six counts contained in the Fourth Superseding Indictment.

Defendant now requests he be granted either a new trial or a judgment of acquittal, filing motions (Doc. 322; Doc. 328), an amended motion (Doc. 358), and numerous supplements to these motions (Doc. 338; Doc. 374; Doc. 377; Doc. 378.) While voluminous, Defendant's multiple filings can be reduced to a few general arguments. With respect to the wire fraud allegations in Counts One through Four, Defendant contends that the Government failed to prove each

element of the offense because it did not establish that the named victims responded to any of Defendant's telemarketing activities. Defendant also advances the general argument that the Government failed to establish that venue was proper in the Southern District of Georgia because no wire transfers that were in furtherance of the fraud scheme were conducted within this district.

Regarding the possession and sale of counterfeit coins alleged in Count 5, Defendant maintains that the Government failed to establish he had the intent to defraud. Also, Defendant contends that the fake coins did not meet the legal definition of counterfeit because they could be identified as fake by a sensible and unsuspecting person of ordinary observation and care. Finally, Defendant argues that the Government failed to prove that he knew the coins were fake.

With respect to the allegations in Count Six of tampering with evidence or proceedings, Defendant contends that the Government failed to establish that he acted corruptly. Defendant offers the altruistic excuse that he was simply trying to keep these fake coins out of circulation. Lastly, Defendant maintains that the fake coins were immaterial to the only charge he was facing at

the time of his arrest—conspiracy to commit mail or wire fraud.

Defendant also argues that he should be granted a new trial or a judgment of acquittal based on alleged prosecutorial misconduct. Defendant claims that the Government failed to properly edit Mr. Folkenberg's video deposition according to this Court's directions. According to Defendant, the Government failed to redact certain portions unfavorable to Defendant, while redacting certain portions favorable to Defendant that the Court did not order to be omitted. Also, Defendant contends that the Government purposefully failed to redact a reference by Mr. Folkenberg that Defendant had previously been convicted of a felony offense. Finally, Defendant alleges that the Government failed to timely provide him with a copy of the redacted transcript as ordered by the Court, only receiving it a few days prior to trial.

Unrelated to the video deposition, Defendant maintains that the Government acted improperly by failing to disclose certain pieces of evidence. First, Defendant states that the Government failed to provide him access to his laptop and iPad, but only gave him copies of the electronic data on the two hard drives. Second, the Government never provided emails from Defendant to Mr. Folkenberg. Defendant

5

contends both that he requested these emails, and that their reference by certain witnesses establish that they actually existed.

In response, the Government argues that it presented ample evidence from which a reasonable jury could conclude that the fraud schemes charged in the indictment involved telemarketing (Doc. 332 at 5-6), and that venue was proper because Defendant caused wire transfers to be initiated or received in this district (id. at 4-5). With respect to selling counterfeit coins, the Government maintains that it presented sufficient evidence to permit the jury to conclude that Defendant knew the coins were counterfeit. (Id. at 6-7.) In addition, the Government reasons that the coins met the statutory definition of counterfeit. (Id.) Regarding Count Six, the Government again points to evidence adduced at trial that it argues is sufficient to support the jury's verdict that Defendant tampered with documents or proceedings. (Id. at 7-8.)

Addressing Defendant's allegations of prosecutorial misconduct, the Government maintains that it properly edited Mr. Folkenberg's video deposition according to this Court's order. (Id. at 8-9.) It believes that any additional redactions were warranted based on the Court's prior ruling, or were merely superfluous commentary

6

immaterial to the deposition. (Id. at 9.) In addition, the jury did not hear Mr. Folkenberg's comment concerning Defendant's prior conviction and any comment concerning Mr. Folkenberg's poor health was proper. (Id.) Finally, the Government again states that prior to trial it provided Defendant with any and all discovery in its possession. (Id. at 9-10.)

**ANALYSIS**

I. <u>DEFENDANT'S REQUEST FOR JUDGMENT OF ACQUITTAL</u>

In assessing a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine if the evidence presented at trial would allow a reasonable jury to find, beyond a reasonable doubt, that the defendant committed the elements of a charged offense. <u>United States v. Gamory</u>, 635 F.3d 480, 497 (11th Cir. 2011). The evidence must be viewed in the light most favorable to the Government, with all reasonable inferences and credibility determinations resolved in the Government's favor. Id. After reviewing the evidence in this case, the Court concludes that Defendant is not entitled to a judgment of acquittal.

A. <u>Wire Fraud</u>

First, the Government presented ample evidence that would permit a reasonable jury to conclude Defendant

committed wire fraud involving telemarketing. Defendant's argument is that the Government failed to establish either Ms. Golden or Mr. Folkenberg contacted Defendant in response to reading any of Defendant's cragslist advertisements. This argument, however, is a red herring because a victim answering an online advertisement is not an element to the offense.

Federal law defines telemarketing as "a plan, program, promotion, or campaign that is conducted to induce purchases of goods or services . . . by use of one or more interstate telephone calls . . . initiated either by a person who is conducting the plan, program, promotion, or campaign or by a prospective purchaser . . . or investor." 18 U.S.C. § 2325. Based on this definition, the Court instructed the jury that

> [i]n order to find that the offense was in connection with the conduct of telemarketing, you must find that the offense involved a plan, program, promotion, or campaign that was conducted to induce the purchases of goods, services, or any other thing of value. Either the person conducting the plan, program, promotion or campaign or a prospective purchaser, participant, or contributor must have initiated at least one interstate telephone call during the offense.

(Doc. 317 at 9.) Nowhere in the statutory definition is a requirement that the victim must have responded to any sort of online or print advertisement.

8

At trial, both Ms. Golden and Mr. Folkenberg testified that they spoke to Defendant via telephone about placing orders for gold coins. At the time they placed those calls, Ms. Golden was located in Minnesota, Mr. Folkenberg in Florida, and Defendant in Georgia. As a result, each victim either initiated or received an interstate phone communication involving Defendant that was designed to induce the purchase of gold coins. Therefore, the jury's determination that Defendant engaged in a wire fraud scheme involving telemarketing is supported by sufficient evidence.

Second, the Government established that venue was proper in this district. As continuing offenses, charges alleging wire fraud are "properly tried in any district where a . . . wire communication was transmitted in furtherance of [the] fraud scheme." United States v. Ebersole, 411 F.3d 517, 527 (4th Cir. 2005). At trial, the Government presented a multitude of records custodians concerning the transfer of money from the victims to various accounts controlled by Defendant. According to this evidence, Defendant initiated the wire transfers alleged in Counts One and Three from the First Bank of Coastal Georgia, located within this district, and directed the transferred funds to the Seminole Hard Rock Hotel & Casino

in Tampa, Florida. With respect to Counts Two and Four, the evidence at trial established that Defendant caused Ms. Golden and Mr. Folkenberg to initiate an out-of-state wire transfer that was received by the First Bank of Coastal Georgia, located in this district. Based on this evidence, the jury could properly conclude that venue was proper in this district.

B. Possession and Sale of Counterfeit Coins

With respect to Count Five, the Government presented ample evidence to permit the jury to conclude Defendant possessed and sold counterfeit coins. Defendant argues that the Government failed to prove both that he intended to defraud Wesley Bassil and that Defendant knew the coins were counterfeit. However, the Government presented evidence that Defendant had previously ordered fake coins from an internet retailer. In addition, the jury was free to conclude that that Defendant intended to defraud Mr. Bassil based on nothing more than Defendant's conduct. See United States v. Maxwell, 579 F.3d 1282, 1301 (11th Cir. 2009).

Also, the Government presented sufficient evidence to permit the jury to conclude that the coins were counterfeit and not merely replicas. The jury was shown the counterfeit coins and asked to determine whether they "bear[] such a

likeness or resemblance to any genuine coin issued under the authority of the united states, and [are] calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care who is dealing with a person supposed to be upright and honest." (Doc. 317 at 10.) It was entirely reasonable for the jury to visually assess the coins and determine that they met the statutory definition of counterfeit.

C. Tampering with Documents or Proceedings

With respect to Count Six, the Government presented sufficient evidence to permit the jury to conclude that Defendant acted corruptly when he requested that Justin Drotleff destroy the counterfeit coins hidden in the trunk of Defendant's car. The jury heard an audio recording of a phone call during which Defendant tells Mr. Drotleff the location of the coins. Defendant then requests that Mr. Drotleff get rid of the coins because they are no good. Defendant now attempts to argue that he simply wanted to keep these fake coins from entering circulation. However, the jury was free to conclude, based on the audio evidence, that Defendant was attempting to destroy material evidence that could later be used against him at trial.

D.  <u>Prosecutorial Misconduct</u>

Throughout this case, Defendant has routinely alleged various forms of wrongdoing by the Government. Therefore, it comes as no surprise that Defendant continues to claim that the Government withheld certain discovery and committed other evidentiary violations. In his motions, Defendant claims that the Government failed to properly redact Mr. Folkenberg's video deposition, permit Defendant access to his seized laptop and iPad, disclose certain emails from Mr. Folkenberg, and provide a transcript of the redacted video deposition by the date set in this Court's prior order. In addition, Defendant alleges that the Government made inappropriate comments at trial concerning Mr. Folkenberg's poor health and death.

This Court has, once again, reviewed Mr. Folkenberg's video deposition and finds the redactions consistent with the Court's prior order. Similarly, the Court once again concludes that the Government provided Defendant with all required discovery in this case, including the digital images of all files on the laptop and iPad, all emails to or from Defendant that were in the Government's possession, and a timely copy of the redacted video deposition transcript. Finally, the Court again finds no reason to

have excluded from trial the minor references to Mr. Folkenberg's failing health.

Defendant also claims that the Government purposefully failed to redact from the video deposition Mr. Folkenberg's testimony concerning Defendant's prior conviction. The Court, however, disagrees with Defendant's characterization. While the Government did erroneously leave in Mr. Folkenberg's statement, the Government realized its error prior to that portion being played for the jury. The Government quickly stopped the video, alerted the Court, and removed that page from the transcripts provided to the jury. The Court determined that the jury neither heard nor read about Defendant's prior conviction because the Government stopped the video deposition prior to the reference. The Court had previously instructed the jurors not to read ahead in the transcripts, which were collected and the offending pages removed prior to resuming the video. Because the jury neither heard nor read Mr. Folkenberg's statement, the Court finds Defendant's argument without merit.

## II. DEFENDANT'S REQUEST FOR A NEW TRIAL

Defendant advances identical arguments in both his request for a judgment of acquittal and for a new trial. Federal Rule of Criminal Procedure 33(a) permits the Court

to "vacate any judgment and grant a new trial if the interest of justice so requires." The decision whether to grant a new trial is left within the sound discretion of the trial Court. United States v. Champion, 813 F.2d 1154, 1170 (11th Cir. 1987). For the reasons stated above, the Court concludes that Defendant is not entitled to a new trial.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial (Doc. 322), Motion for Judgment of Acquittal (Doc. 328), and Amended Motion for New Trial (Doc. 358) are **DENIED**.

SO ORDERED this 5th day of March 2018.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA